UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

.

IN RE:                              . Case No. 05-18439-MG
                                    .
WILLIAM ROBERT PAWSON,              . New York, New York
                                    . Wednesday, August 13, 2008
                Debtor.             . 10:02 a.m.
. . . . . . . . . . . . . . .

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:              David B. Shaev, Esq.
                             Empire State Building
                             350 Fifth Avenue, Suite 7210
                             New York, New York 10118

For JPMorgan Chase
Bank:                        Edward J. Lesniak, Esq
                             BURKE, WARREN, MAC KAY &
                              SERRITELLA, P.C.
                             22nd Floor, IBM Plaza
                             330 North Wabash Avenue
                             Chicago, IL 60611


(Appearances continued)

Audio Operator:              Electronically Recorded
                             by Court Personnel

Transcription Company:       Rand Reporting & Transcription, LLC
                             80 Broad Street, Fifth Floor
                             New York, New York 10004
                             (212)504-2919
                             www.randreporting.com


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

A P P E A R A N C E S:  (Continued)


For JPMorgan Chase
Bank:                          Edward A. Wiener, Esq.
                               STEIN, WIENER & ROTH, LLP
                               One Old Country Road
                               Suite 113
                               Carle Place, NY 11514

For the U.S. Trustee:          Andrew D. Velez-Rivera, Esq.
                               U.S. DEPARTMENT OF JUSTICE
                               Office of the U.S. Trustee
                               33 Whitehall Street, 21st Floor
                               New York, NY 10004

APPEARING VIA TELEPHONE:

For Chapter 13 Trustee:        Jody L. Kava, Esq.
                               JEFFREY L. SAPIR
                               399 Knollwood Road, Suite 102
                               White Plains, NY  10603

1                        <u>I N D E X</u>
                          08/13/08
2
                                                    <u>Page</u>
3     <u>MOTION FOR APPROVAL OF SETTLEMENT</u>
      <u>AGREEMENT</u>                                 6
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (Proceedings commence at 10:02 a.m.)

2         THE COURT:  All right.  Please be seated.  We're

3    here in In Re William Robert Pawson.  It's Number 05-18439.

4    It's the hearing with respect to a proposed settlement of the

5    debtor's cross-motion for sanctions.

6         Counsel, please make your appearances.

7         MR. SHAEV:  David B. Shaev for the debtor, Your

8    Honor.

9         THE COURT:  Good morning, Mr. Shaev.

10        MR. LESNIAK:  Good morning, Your Honor.  Edward

11   Lesniak for JPMorgan Chase Bank.  Also present in the

12   courtroom, Your Honor, from JPMorgan Chase Bank is Mr. Jim

13   Berg (phonetic), who is a vice president and assistant

14   general counsel.

15        THE COURT:  Good morning, Mr. Lesniak and Mr. Berg.

16        MR. WIENER:  Edward Wiener for JPMorgan Chase Bank

17   from Stein, Wiener & Roth.

18        THE COURT:  All right, Mr. Wiener.

19        MR. VELEZ-RIVERA:  Good morning, Your Honor.  Andrew

20   Velez-Rivera for the United States Trustee.

21        THE COURT:  Good morning, Mr. Velez-Rivera.

22        MS. KAVA:  (Via telephone)  Jody Kava for the

23   Chapter 13 trustee.

24        THE COURT:  Good morning, Ms. Kava.

25        MS. KAVA:  Thank you for letting me appear by

1  telephone, Your Honor.

2         THE COURT:  Certainly.

3         All right.  This matter was on the calendar last

4  Thursday, a regular Chapter 13 day.  There may have been some

5  confusion whether the matter was going to be on or not.  A

6  proposed stipulated order had been provided to the Court in

7  advance of the hearing that would have resolved the cross-

8  motion for sanctions.  It was a cross-motion to JPMorgan

9  Chase's motion to lift the automatic stay.

10        During the hearing last Thursday, Mr. Shaev

11 appeared, and I indicated on the record that I was not

12 prepared to approve the stipulated order.  And I cited -- and

13 there is a copy of the transcript that's on -- you can all

14 have a seat, please.  I cited in the record a copy of Judge

15 Lynch's decision in the District Court in Geltzer v. Anderson

16 Worldwide, which is at 2007 WL, 273526.  It's a January 2007

17 decision when he declined to approve a Rule 9019 motion to

18 approve a settlement between Robert Geltzer, a Chapter 7

19 trustee, and Anderson Worldwide and Arthur Anderson in

20 connection with Asia Global Crossing.

21        And I also, I believe, mentioned on the record my

22 prior decision in In Re Food Management Group, LLC, which is

23 at 359 BR 543, a 2007 decision which involved 11 U.S.C.

24 Section 107, which is the Bankruptcy Code section that deals

25 with sealing.

1     I indicated on the record that -- and entered an

2   order after the hearing last Thursday setting the matter for

3   hearing today.  Other than Mr. Lesniak's pro hac vice

4   application, there were no other filings that relate to the

5   proposed settlement.

6        Mr. Shaev, do you want to be heard?

7        MR. SHAEV:  Yes, Your Honor.  Just in general, the

8   Court is well aware of the facts that led to this cross-

9   motion.  But we've had very fruitful discussions very quickly

10  in this matter, and Chase did step up rather quickly to

11  settle this to, hopefully, mitigate against the damages they

12  owe to my client.

13       Part of the settlement is a correction of their

14  credit reports and a statement of their mortgage.  There's a

15  whole slew of things that are very important to my client and

16  myself on behalf of the client.  And my worry is that my

17  clients would be prejudiced in some fashion if this matter is

18  not quickly brought to conclusion.

19       THE COURT:  Right.  Thank you, Mr. Shaev.

20       Who wants to speak on behalf of Chase?

21       MR. LESNIAK:  I would like to, Your Honor.  Thank

22  you.

23       THE COURT:  Go ahead, Mr. Lesniak.

24       MR. LESNIAK:  Thank you, Your Honor.  And thank you

25  for so quickly executing my petition to be heard pro hac

1   vice.  Things are moving pretty quickly in this matter, and I

2   appreciate that.  It's an honor to be here to address you on

3   this.

4         I thought it would be helpful, if I could, to take a

5   moment to just make it crystal clear what exactly led to this

6   court hearing and what we are asking the Court to do and what

7   we are not asking the Court to do.

8         When this matter first came to Chase's attention,

9   Chase asked me to get involved.  We quickly became involved

10  and had very fruitful, very professional, very respectful

11  negotiations with Mr. Shaev.  And we were very quickly able

12  to reach a resolution of the cross-motion that's pending.

13  And that led to a settlement agreement.

14        Mr. Shaev --

15        THE COURT:  Not presented by a Rule 9019 --

16        MR. LESNIAK:  No, Your Honor --

17        THE COURT:  It was resolved by a --

18        MR. LESNIAK:  I will get to that, Your Honor, but

19  that's correct.  It's not a 9019, it's not a trustee's

20  motion, it's not brought in any fiduciary capacity.  We

21  consider the matter to be a private matter between Chase and

22  the debtor.  This concerns an action that was taken by Chase

23  to which the debtor objected, a post-petition action.  The

24  debtor said, I have a claim here because of this conduct.

25  And whether that's accurate or not, we decided to reach a

1   settlement of it which really only affects two parties:

2   Chase and the debtor.

3          As I understand it, this is a 100 percent plan.

4   There are no payments being made to Chase in the Chapter 13

5   plan.  It seems to me that the Chapter 13 trustee would have

6   no apparent interest in this matter.  It's purely a matter

7   between Chase and the debtor.

8          Now, to get to this point, as part of the

9   settlement, Mr. Shaev said, okay, Chase is agreeing to do

10  certain things I want, certain things that are set out in the

11  proposed stipulated order.  And he said to me quite honestly,

12  we want more than just Chase's agreement, we would like you

13  to submit this to -- we'd like this submitted to the

14  Bankruptcy Court and have the force and effect of a Court

15  order.  And we said, okay, we will agree to that.

16         So what we were asking the Court to do is, in aid of

17  a settlement that is very favorable to the debtor, to order

18  Chase to do certain things that are part of the settlement

19  agreement.  We do not feel, because there's certainly not a

20  9019 motion, it's not a 4001 motion that's perhaps in

21  settlement of a relief of stay issue.  The motion for relief

22  of stay has been withdrawn, was withdrawn back in July.  So

23  it's not anything that requires Court approval.  So we are

24  not by this order asking the Court to approve the settlement

25  or to pass on the fairness of the settlement.

1    We are not asking the Court to seal the settlement

2  because we are not asking to file it.

3    THE COURT:  Well, you don't have anything in the

4  order that you'd care about sealing.  You left that out.

5    MR. LESNIAK:  Well, Judge, because we're not -- to

6  ask something be put under seal would be -- something would

7  be filed.  We do not intend to file the settlement agreement.

8  So there's no reason to --

9    THE COURT:  You're asking for my approval.  You're

10  asking for me to sign a stipulated order.  You're asking for

11  the Court to approve a stipulated order that has certain

12  terms that require Chase to do certain things with respect to

13  the debtor.  So you're looking for the Court's imprimatur on

14  partially disclosed terms of a settlement.

15    MR. LESNIAK:  Well, it's at the debtor's request.

16  Yes, Your Honor.  We are asking the Court to order Chase to

17  do certain things.

18    THE COURT:  See, Mr. Lesniak, and I'll be very

19  candid; when I saw the cross-motion and I read the motion to

20  lift the automatic stay, which unlike in the Schuessler case

21  before Judge Morris, Chase, I think, had the good sense to

22  withdraw the lift-stay motion pretty quickly here.

23    But I reviewed the lift-stay motion, I reviewed the

24  cross-motion, and I think I said this on the record last

25  week, that I came very close to entering an order to show

1   cause why Chase and its counsel of record, which was not you,

2   should not be sanctioned without regard to whether Mr. Shaev

3   was able to work out matters between his client and Chase.

4   The Court has a very strong interest in any pleadings filed

5   in this court, particularly motions to lift stay, that ask

6   for affirmative relief from the Court.  Simply withdrawing a

7   motion -- and I have no basis on which to decide now whether

8   the motion was well taken or not well taken.

9        But when you file a motion that asks for affirmative

10  relief from the Court, counsel who signs the motion

11  undertakes certain obligations to the Court.  Certainly, the

12  signature on the motion and any supporting papers immediately

13  under 9011 imposes obligations on the parties filing the

14  motion.  The Court's inherent power comes into play.  A whole

15  host of issues come into play.

16       So I was certainly -- before Mr. Shaev -- and,

17  certainly, Mr. Shaev had attached Judge Morris's decision in

18  Schuessler to his cross-motion.  I was very familiar with the

19  Schuessler decision, as I think all of my colleagues in the

20  Southern District of New York are very familiar with it.

21       And I didn't -- I figured, well, the motion will

22  come on for hearing -- the cross-motion will come on for

23  hearing and I wanted to hear what was going to be said at

24  that time.  Then I was advised that -- before I even saw the

25  stipulated order that a settlement of the cross-motion had

1   been reached, that Mr. Shaev had declined initially to

2   withdraw the cross-motion, that a settlement had been

3   reached.  It was in the form presented.

4          I'm certainly open to considering whether to approve

5   a settlement, but as I indicated last week, my signature does

6   not go on any order in this case that I don't know all the

7   terms, unless you file a motion under 107(b) to seal.  Since

8   none has been filed, I guess I don't have reason to rule on

9   it.  But I did call Mr. Shaev's attention, and I'm sure

10  you've seen the transcript from last week, to Judge Lynch's

11  decision, which is -- the only thing that distinguishes this

12  case from <u>Anderson Worldwide</u> is that, here, you didn't file a

13  9019, you simply asked for me to sign a stipulated order.

14  And I'm not sure that that's appropriate.

15         MR. LESNIAK:  Your Honor, if I may respond to that -

16  -

17         THE COURT:  Go ahead, Mr. Lesniak.  Go ahead.

18         MR. LESNIAK:  Those are excellent points, Judge, and

19  I would like to have an opportunity to respond to them.

20         THE COURT:  Yeah.

21         MR. LESNIAK:  In terms of the last point you raised,

22  there is language at the beginning of the <u>Geltzer</u> case which

23  specifically discusses that, under normal circumstances,

24  settlements between parties that only affect those parties

25  are generally not a matter for public record.

1      There is also some language that says that the Court

2 takes a little bit more interest when there is a so-ordered

3 judgment.  To the extent this falls within that realm, we

4 appreciate that.  And our settlement agreement allows for us

5 to disclose the settlement agreement in camera.  We have a

6 confidentiality agreement, however, that would preclude us,

7 at this stage, from filing it in the public records.

8      So we are certainly not trying to hide the agreement

9 from this Court.

10      THE COURT:  That was true in Geltzer as well, and

11 Judge Lynch -- the parties were willing to show the agreement

12 to Judge Lynch in camera, and he didn't have any trouble

13 disposing of that argument.

14      MR. LESNIAK:  I understand that, Judge.  But I

15 believe that the circumstances -- and I would suggest that

16 the circumstances are very different.  In 9019 -- and Geltzer

17 was a 9019 motion that was made by a trustee who was settling

18 a pre-petition claim, the results of which would affect how

19 much was paid out to numerous creditors.  So the Court was in

20 the position -- and I certainly understand the Geltzer case

21 and really agree with it.  How can a judge be expected to

22 approve a settlement that affects a large group of people

23 without knowing what the dollar amount is?

24      That is distinguishable from this particular case

25 where the only two parties involved are Chase and the debtor,

1    and Mr. Pawson.  So we believe that it's a very different

2    circumstance.

3         We are not asking the Court to approve the

4    settlement.  The matters that were raised that we're asking

5    the Court to order are those things that the debtor felt

6    strongly about needing Court protection on, and so we agreed

7    to do that in aid of the debtor's request and in getting this

8    settlement done.  So I think there is a significant

9    distinction between this case and the 9019 situation

10   addressed in that particular -- in the Geltzer case.

11        And as I say, we are perfectly amenable to

12   disclosing the agreement to the Court in chambers so you can

13   satisfy yourself that it's a settlement that's good for the

14   debtor.  We've probably disclosed in the Court order about

15   ninety percent of the terms of the settlement, so there's not

16   a lot left, but you're welcome to see that.  That was our

17   understanding with the debtor.  And we would Certainly live

18   by that.

19        As for the rule to show cause situation, Judge,

20   nothing that we've -- that we were doing in connection with

21   the settlement is intended in any way, nor could it affect

22   the Court's ability to take whatever action it felt

23   appropriate.  We understand that you have that power, and if

24   you choose to exercise that under these particular facts and

25   circumstances, that's the Court's determination and we would

1   address it at that time.

2           But other than that, Judge, I don't think it would

3   be fair for me to make any comment on the underlying facts

4   because from what I'm hearing, it may ultimately go to an

5   evidentiary hearing.  So I don't think I can comment any

6   further on it.

7           THE COURT:  Well, I'm not sure I agree with that

8   last statement because I fully intended -- if you or someone

9   else had appeared last Thursday, I fully intended to ask

10  about the underlying facts and circumstances here, and I'm

11  going to do that right now.

12          MR. LESNIAK:  Okay.

13          THE COURT:  And either you or -- is it Mr. Wiener or

14  --

15          MR. WIENER:  Mr. Wiener.  Mr. Wiener, your firm is

16  counsel of record on --

17          MR. WIENER:  That's correct.

18          THE COURT:  All right.  Your Honor, in Schuessler,

19  what Judge Morris there was faced with was a debtor who had

20  been making payments in a Chase branch, and at some point --

21  I won't recount the whole history; it's a lengthy sixty-age

22  opinion -- Chase declined to accept the payments in the

23  branch for the reasons that Judge Morris explores.

24          I this matter, as I understand it, the debtor had

25  been making payments online rather than bringing them into a

1  branch, and there was a history of making the payments

2  online, which had been accepted until the two payments on

3  which Mr. Wiener's firm moved to lift the stay, claiming that

4  there were post-petition defaults that were, in fact,

5  payments that had been attempted to be made but weren't

6  accepted.

7          Tell me what Chase's policy is with respect to

8  payments online.  I, you know, read Schuessler.  I understand

9  they had some policy about not accepting payments in a

10  branch.  And I want to know what the policy is with respect

11  to payments by a debtor online.  The excuses that were given

12  in Schuessler for not accepting them in the branch was, well,

13  you know, an employee in a branch might violate the automatic

14  stay by asking questions.  Well, when you pay online, there's

15  nobody to ask you questions.  I mean, what's the policy?  Why

16  weren't -- do you agree that the payments were not accepted

17  online here?

18          MR. LESNIAK:  Yes, Your Honor.  There's a little

19  more history to it as I understand it.  Okay?  And I want to

20  make it clear that this is as I understand looking at the

21  facts.

22          THE COURT:  If Mr. Wiener needs to address it, he

23  can.  I'll let one -- you know, either one or both of you

24  talk about it.

25          MR. LESNIAK:  I'll address it, Judge, and --

1              THE COURT:  Go ahead, Mr. Lesniak.

2              MR. LESNIAK:  -- and subject to correction from Mr.

3    Berg if I get anything wrong.

4              But as I understand it, after this case was filed,

5    Mr. Pawson was notified that payments would only be accepted

6    in a certain fashion.  And that fashion included by check, I

7    believe by Western Union, but would not be accepted online.

8    Mr. Pawson bided by that from 2005 until sometime in 2007.

9              Then, in 2007, he tried to make an online payment,

10   and contrary to the way the account should have been coded,

11   the payment was allowed to go through.  Mr. Pawson continued

12   to make payments online thereafter until he became two months

13   delinquent and, under its guidelines, Chase referred the

14   matter out to a motion for relief from the stay.

15             THE COURT:  Did he become two months delinquent, or

16   did Chase reject two payments that he made?  Mr. Shaev, in

17   his objection and cross-motion, argued that the payments --

18   that looking at the payment history, the payments were

19   timely, but were rejected -- the online payments, but the two

20   payments were rejected.

21             MR. LESNIAK:  That is not our position, Your Honor.

22   The position is that the borrower, Mr. Pawson, was in fact

23   two months delinquent at the point in time when Chase

24   referred the matter out for the filing of a motion for

25   relief.

1       Shortly thereafter, Mr. Pawson attempted to make a

2   payment online, and that was rejected.

3       After that, he tried to make another payment online,

4   I believe the same day that the motion for relief was filed,

5   on or about the same day that the motion for relief was

6   filed.  He then contacted Chase -- I think on the 24th of

7   June he contacted Chase.  Chase informed him that payments

8   would not be accepted online because the matter had been

9   referred out to counsel for a motion for relief.

10      The next day, Chase received a check, on the 25th of

11  June, I believe, Chase received a check for the two months

12  delinquent.  And, subsequently, Chase withdrew its motion for

13  relief because the account had then been brought current.

14  And my understanding is the account is presently current --

15  in a current status.

16      So there's some fluidity there where the matter is

17  referred out, and then the borrower sends payment, and

18  there's some reaction time involved in making sure those

19  payments are recognized, and then withdrawing the motion,

20  which Chase did.  When the debtor came current, Chase

21  withdrew the motion.

22      It was not a situation where the failure to accept

23  an online payment caused the borrower to go two months in

24  default.  He was two months in default at the time he tried

25  to make the first online payment that was rejected.

1          THE COURT:  Thank you, Mr. Lesniak.

2          MR. LESNIAK:  Thank you.

3          THE COURT:  Mr. Wiener, I have some questions for

4    you.  I take it the notary who notarized various documents in

5    this case works in your office?

6          MR. WIENER:  Your Honor, that actually is an issue

7    that I was going to address when Mr. Lesniak was finished.

8    That was clearly a scrivener's error, if you were, as to what

9    happened in the case.

10          The affidavit was forwarded to Chase, it was

11    executed by an officer of Chase in Ohio --

12          THE COURT:  Mr. Keete (phonetic)?

13          MR. WIENER:  Mr. Keete.  Notarized in Ohio, and

14    transmitted back to us.  Our office -- or instead of scanning

15    in the signed sheet with the affidavit and the notary on it,

16    as a policy of putting on the "S" and the signature and the

17    name.  And in this particular case, the paralegal transcribed

18    the notary information from the individual who mailed out the

19    motion for relief.  If you look at the name on the affidavit

20    of service for the motion for relief, it is the same

21    incorrect notary on the affidavit.

22          THE COURT:  I looked at that.

23          MR. WIENER:  And, clearly, it was an error.  But

24    there was no -- the affidavits were all pre-signed according

25    -- not pre-signed.  They were all signed, forwarded back to

1   us, and then filed in accordance with the Court's rules.  It

2   was a transcription error, and our apologies to the Court for

3   doing that.  But there was nothing done improper in terms of

4   having pre-signed affidavits or -

5          THE COURT:  The worksheet that M-347, our general

6   order requires was included.  I looked at it again this

7   morning.  The online -- when it's filed on ECF, it didn't

8   have a signature or even the slash with a signature.  Now it

9   may have been that the actual -- let me look in the file here

10  and see whether the one in the file -- it may be that what's

11  online is not what's in the file.  Just give me a second.

12         (The Court reviews documents.)

13         THE COURT:  No, there is a signed one in the file.

14  When I looked online this morning, the one that was online

15  didn't have a signature.  And that, of course, shows the

16  Columbus, Ohio --

17         MR. WIENER:  Correct.

18         THE COURT:  Mr. Shaev made much of the -- that

19  overstates it.  Mr. Shaev in his objection and cross-motion

20  pointed out that your -- I assume it's your associate who

21  signed a declaration or an affidavit that was part of your

22  moving papers that has the boilerplate language about lack of

23  adequate protection for this million-dollar apartment with a

24  two-hundred-thousand-dollar loan that may or may not have

25  been two months in arrears.  And what basis did she have to

1    make the statements that she made in her affidavit?

2             MR. WIENER:  Well, Judge, clearly, there does appear

3    to be sufficient equity in this property.  There's a

4    tremendous amount of equity.

5             THE COURT:  I would think so.

6             MR. WIENER:  We're not going to argue that.  But I

7    think we also need to look at -- this is not a Chapter 7.

8    This is a Chapter 13.  And I think that the basis for seeking

9    the relief here was the disputed payments and the disputed

10   arrears and whether, in fact, that they were in arrears.

11            THE COURT:  None of that, of course, was revealed to

12   the Court until Mr. Shaev filed his objection.

13            I mean, the thing -- Mr. Wiener, Mr. Lesniak, I

14   mean, the thing that most bothers me about this is this

15   debtor has very able counsel.  Mr. Shaev appears before me

16   regularly on the Court's Chapter 13 calendar.  And he is a

17   very able lawyer who represents his clients to the fullest

18   and protects their rights and is very vigorous in protecting

19   their rights.

20            What I worry about is this very long lift-stay

21   calendar I have every two weeks with many pro se debtors, or

22   some represented by counsel who, for whatever reason, are not

23   as tenacious or vigorous in their defense of their clients as

24   Mr. Shaev is for his.  And so, you know, when Judge Morris

25   early in her opinion said, this opinion serves as a warning,

1   the warning seems to have been unheeded.

2           If someone in your office before filing this motion

3   had looked at the ECF docket and seen that Mr. Shaev was

4   counsel of record and picked up the phone and called Mr.

5   Shaev and said, you know, we're about to file a motion to

6   lift the automatic stay because two payments in arrears,

7   before we file the motion can you tell me what the situation

8   is, Mr. Shaev would have undoubtedly very quickly gotten back

9   to you and said, no, no, no, here is the explanation, the

10  client sought to make the payments online, they were

11  rejected, or let me see -- you know, send me a copy of the

12  payment history, let's look at it and figure it out.

13          This motion should never have been filed.  And the

14  statements that were made in support of the motion never

15  should have been made.  And when Judge Morris, in Schuessler,

16  in the strongest possible terms -- let me find it.  It's on

17  Page 76 of the -- Judge Morris's decision that appears

18  online.  It's not the Westlaw version, but Judge Morris says

19  on Page 6, quote:

20          "A creditor's inattentiveness can be just as abusive

21          of process as an intentional act of misconduct.

22          Under the facts in this case, the actions of the

23          mortgage servicer constituted an abuse of process

24          that this Court has a duty to rectify pursuant to 11

25          U.S.C. Section 105(a), regardless of whether or not

1       the abuse is the result of intentional conduct.

2       This lengthy introduction and the Court's findings

3       of facts set forth below are intended to serve as a

4       warning to all creditors that, in this Court's view,

5       the conduct of the mortgage servicer in this case,

6       including acts that were taken and not taken by its

7       employees, agents and attorneys constituting abuse

8       of process."

9       I'll end the quote there.

10      So in the strongest possible terms, Judge Morris

11   certainly put Chase on notice that -- and I'm not saying the

12   conduct here -- I haven't had an evidentiary hearing --

13   whether the facts here are the same as in Schuessler, I'm not

14   prepared to say at this point.  But I can't fathom why lift-

15   stay motions get filed in a case like this without somebody

16   picking up the phone and calling counsel of record and

17   alerting them.

18      The only possible reason I see is that this machine

19   spits out motions and counsel get paid for making motions,

20   not for making a phone call to the debtor's counsel.  And,

21   hence, the Court finds on its docket still another lift-stay

22   motion that never should have been made.

23      Even if I accept Mr. Lesniak's representations as to

24   the facts as to whether this debtor was two months in arrears

25   when the online payments were rejected or not, once the

1  debtor -- I mean, it seems a matter of record that the debtor

2  attempted to make the payments online.  Whether they were

3  timely or not, I don't have to decide for now.  I mean, I

4  can't fathom it.

5          MR. LESNIAK:  Your Honor, may I respond to that?

6          THE COURT:  Go ahead, Mr. Lesniak.

7          MR. LESNIAK:  Just a couple of things, Judge,

8  because the concerns are obviously very legitimate ones, and

9  Chase is very well aware of those concerns in the Schuessler

10 case.

11          A couple of points I would like to make.  The Court

12 is absolutely correct, and we've had discussions about that

13 this morning, that it would have been a good idea to pick up

14 the phone and call Mr. Shaev.  However, in fairness to Chase,

15 I would just also like to point out that it probably would

16 have been a good idea for Mr. Shaev to pick up the phone and

17 call Chase's counsel and say, by the way, do you know my

18 client just sent in two payments.  So I do think it's a two-

19 way street that I would ask the Court to be mindful of.

20          THE COURT:  Chase is the one who filed the motion to

21 lift the automatic stay.  Don't put it on Mr. Shaev's

22 shoulders.

23          MR. LESNIAK:  I'm not -- I'm not putting it on his

24 shoulders, Judge.

25          THE COURT:  Did he know you were going to file --

1    you didn't do it personally, I understand.  Your firm is

2    national counsel to Chase.  Do I understand that correctly?

3            MR. LESNIAK:  Yes, Your Honor.

4            THE COURT:  And Mr. Wiener's firm is local counsel?

5            MR. LESNIAK:  Is the local counsel.

6            THE COURT:  Did your firm prepare the papers, or Mr.

7    Wiener's firm?

8            MR. LESNIAK:  No, we don't prepare those, Judge.

9            THE COURT:  All right.

10            MR. LESNIAK:  But in addition to that, Chase is very

11    mindful of these concerns.  And Chase is taking steps to

12    address these specific concerns.

13            Now Chase services over three million mortgages.  So

14    sometimes the boat moves a little slower than we'd like.  But

15    Chase is taking steps to address this, and I can be specific.

16            First, Chase does a lot of loan servicing.  And it

17    is negotiating with its investors to change the guidelines

18    that it is obligated in its servicing agreements to follow

19    with respect to filing motions for relief.  The reason Chase

20    files the motion when the debtor is two months behind is

21    because that's what required of it by its investors when it's

22    servicing loans.

23            Chase is negotiating to extend that period out to

24    three or four months behind so we have a clearer record of

25    default to avoid these types of situations.  Point Number 1.

1          THE COURT:  That wouldn't solve a problem about

2    rejected payments.

3          MR. LESNIAK:  It wouldn't, Judge.  But I think

4    you're -- the situation you have here is when you're one or

5    two months behind, that may be easier to catch up.  I think

6    when you fall three or four months behind, it's a better

7    indication that this borrower is not able to keep current.

8    And so we would -- Chase is negotiating to extend out that

9    time frame so you don't have these perfect storm situations

10   where somebody is trying to send you the payment, or they're

11   sending you the payment at the same time that you're filing

12   the motion.

13         Point Number 2:  Chase has hired an in-house counsel

14   whose job is specifically to review all of the motions filed

15   in New York, all of the motions for relief after they're

16   prepared by local counsel so that there is another set of

17   attorneys' eyes in-house at Chase.  Unfortunately, that

18   person was not in place and functioning yet at the time this

19   matter was -- came up.  But Chase is looking to address these

20   situations so we don't have another situation that causes the

21   Court this type of concern.

22         THE COURT:  Mr. Wiener's papers are perfectly fine

23   on their face.  It's only if one goes behind them -- I mean,

24   what is -- you know, if in-house -- what was in-house counsel

25   supposed to do when they looked at -- what would they do if

1   they looked at Mr. Wiener's papers?  I mean, the papers look

2   proper.  It's only when you find out the background and you

3   find out that two payments online were rejected -- whether it

4   was when there was already a default, whether there was not a

5   default is almost beside the point.  It was certainly before

6   the lift-stay motion was filed.

7            MR. LESNIAK:  Well, that's the kind of information

8   that in-house counsel would have access to, Judge:  The

9   customer service notes, the attempts to make payments online,

10  knowing more currently exactly what is the situation on that

11  particular day before the motion is filed.

12           So I think it would make a significant difference in

13  trying to -- combining those two factors would make a

14  significant difference in trying to address these types of

15  situations.

16           THE COURT:  Is that procedure in place currently?

17           MR. LESNIAK:  That's my understanding, Your Honor.

18  Mr. Berg can address that.  It was not at the time the Pawson

19  matter was filed.  That person was in the process of being

20  hired.  That person is in place now.

21           THE COURT:  All right.  Let me hear -- Ms. Kava, on

22  the issue of confidentiality of the terms, do you want to be

23  heard on that?

24           MS. KAVA:  I just have a problem, Your Honor, with

25  the fact -- what was said almost at the beginning of the

1  conversation, which was that this is just between two parties

2  and the Chapter 13 trustee is not -- should not be involved

3  at all.  The Chapter 13 trustee is involved in every Chapter

4  13, and I think the trustee is entitled to all information

5  that's available.

6          If Your Honor wants to hold on to information

7  yourself, that's of course fine.  But I have a hard time

8  taking it that the Chapter 13 trustee should have no interest

9  in this case.  If the debtor is not making his mortgage

10  payment, that's certainly an issue for the trustee.  It goes

11  to whether or not he's complying with his plan.  So it's not

12  a two-party dispute.  The trustee is absolutely taking a very

13  strong interest in this.

14          MR. SHAEV:  Your Honor, may I?

15          THE COURT:  Let me ask Mr. Velez-Rivera first, and

16  then I'll give you a chance, Mr. Shaev.

17          MR. VELEZ-RIVERA:  Thank you, Your Honor.  I'll

18  follow up on Ms. Kava's point, actually.  It's one of the

19  matters I desire to address with the Court.

20          The matter was actually brought to our office very

21  recently.  But we've reviewed the file this morning, and

22  based on what we can see, the argument that this is a private

23  matter is astonishing.  Bankruptcy is, if nothing else, life

24  in a fish bowl.  My office hasn't seen either the proposed

25  order which Your Honor has or the underlying settlement

1  agreement.

2        THE COURT:  The only thing I have is a proposed

3  stipulated order that -- and it's not online.  It was

4  provided to the Court last week before the hearing.

5        MR. VELEZ-RIVERA:  We also disagree vehemently with

6  the premise that this matter affects only two parties.  As

7  Ms. Kava said, the Chapter 13 trustee would be the third

8  party, and with the integrity of the bankruptcy process

9  overwhelmingly at issue, nothing else in the entire

10 bankruptcy system is also a participant in the proceedings,

11 not to mention my own client.

12       THE COURT:  Yeah, I would -- you know, 9019(a) --

13 people can address whether that applies here or not, but

14 9019(a) provides that on a motion -- quote:

15            "On motion by the trustee and after notice and a

16            hearing, the Court may approve a compromise or

17            settlement.  Notice shall be given to creditors, the

18            United States Trustee, the debtor, and indenture

19            trustees as provided in Rule 2002, and to any other

20            entity as the Court may direct."

21       So in any 9019 settlement, your office receives

22 notice of it.  It's not clear to me whether 9019, by its

23 terms, applies here or not.  I'm not prepared to -- no such

24 motion was made here.  It is a question I have as to whether

25 any time you're asking it's acknowledged to be a settlement,

1  the Court is being asked to approve it and sign.  I don't

2  understand why 9019 doesn't apply.

3          Go ahead, Mr. Velez-Rivera.

4          MR. VELEZ-RIVERA:  On its face, Your Honor, we

5  haven't seen all of the papers.  But we have a conceptual

6  difficulty getting there, as well.

7          In any event, even assuming that hurtle can be

8  jumped over, we still have the sealing issue before us.  Your

9  Honor is being asked to place -- to exclude something from

10  the record which underlies the stipulated order in front of

11  you.  We haven't seen either one.  We can't pass on the

12  sealing -- on the paper that's being sealed, obviously,

13  without seeing it.  And I don't think the Court can do that,

14  either.

15          We have, as Your Honor knows, a longstanding

16  vigilance over sealing motions in Your Honor's courtroom, and

17  every other courtroom in this building.  We'd like to, if the

18  Court gets there, have an opportunity to pass on that.

19          THE COURT:  Thank you, Mr. Velez-Rivera.

20          MR. VELEZ-RIVERA:  Thank you.

21          THE COURT:  Mr. Shaev?

22          MR. SHAEV:  Your Honor, I do have just one point I

23  want to make in reference to the Chapter 13 trustee.  I don't

24  think anyone was alluding to the fact that the standing

25  trustee has no position in this matter.  I think the point

1    being made was that this is a hundred-percent payment plan,

2    there's no plan arrearage, no creditors being affected, no

3    party but actually the individuals involved in it.  I think

4    that was the intent of that statement.

5         MS. KAVA:  But, Mr. Shaev, the debtor is not making

6    his mortgage payments.  Isn't that part of his budget?  Isn't

7    the trustee supposed to be aware of that?  Maybe he's not

8    making other payments to other creditors that he's supposed

9    to be paying outside the plan.

10        THE COURT:  But the plan Certainly provides that

11   secured creditors are to be paid outside the plan.  If the

12   debtor doesn't do it, it's a default on the terms of the

13   plan.  While the payments don't go to the trustee, it's still

14   -- I mean, I do get lift-stay motions in post-confirmation

15   matters where the creditor is arguing under 362(d)(1) --

16   well, you know, they argue that they've breached the plan.

17   That's a basis for lifting the stay.  So --

18        MR. LESNIAK:  Your Honor, may I respond further if

19   Mr. Shaev is done?

20        THE COURT:  Certainly, Mr. Lesniak.

21        MR. LESNIAK:  With respect to the Chapter 13

22   trustee, Judge, what we're saying is that the settlement does

23   not affect the Chapter 13 trustee.  If payments aren't being

24   made, certainly the Chapter 13 trustee would receive notice

25   of the motion for relief.  Nothing in the settlement involves

1   payments.  It's a settlement of the debtor's claim on the

2   cross-motion.

3           THE COURT:  Are any payments being made to the

4   debtor or the debtor's counsel under the terms that have not

5   been disclosed to the Court?

6           MR. LESNIAK:  Is a payment of money being made?

7           THE COURT:  Yes.

8           MR. LESNIAK:  Yes, it is, Your Honor.  There's a

9   lump-sum payment of money that's being made to the debtor.

10          As to the U.S. Trustee's point, there is no sealing

11  motion here.  We're not asking anything be sealed because

12  we're not asking to file anything.

13          THE COURT:  You are.  You're asking -- you're

14  proposing to file -- here it is.  I got a disk and I got an

15  order.

16          MR. LESNIAK:  We're not asking to file --

17          THE COURT:  And it's called stipulated order, and it

18  has a -- you've -- Mr. Wiener has signed it, Mr. Shaev has

19  signed it, and there's a place for me to sign it.

20          MR. LESNIAK:  Your Honor, we are not asking for that

21  Court order to be sealed.

22          THE COURT:  Oh, I understand that.

23          MR. LESNIAK:  Okay.

24          THE COURT:  It's just the terms of the settlement

25  that you don't want sealed -- that --

1    MR. LESNIAK:  No, we don't -- we're not even

2    providing it to -- but let me give another example.  Let me

3    go a little bit different direction to point out what we're

4    doing here.

5         It would, I would suggest --

6         THE COURT:  Just hold on, Mr. Lesniak.  Paragraph 3

7    of the stipulated order provides:

8              "In order to avoid the costs and expenses of

9              litigation of the cross-motion, and without any

10             admission of liability, William and Chase have

11             entered into a settlement agreement and release with

12             respect to the cross-motion, the terms and

13             conditions of which the parties have agreed to keep

14             confidential, except to the extent disclosed

15             herein."

16        MR. LESNIAK:  Yes.  That's correct, Judge.

17        What I'm suggesting is this:  If, after the cross-

18   motion had been filed, and Mr. Shaev and I had our

19   negotiations, and Chase and Mr. Pawson agreed to a

20   settlement, if all Chase had done was pay X dollars to Mr.

21   Pawson, and Mr. Shaev had withdrawn his cross-motion, there

22   would be nothing pending further before the Court.  And I

23   suggest that he could well have done that.

24        The only reason we're here is that Mr. Shaev said, I

25   would like the Court to order Chase to do certain things as

1   part of this settlement.  And we said, okay.  But, certainly,

2   if -- if Mr. Shaev had withdrawn his motion, I would suggest

3   that the U.S. Trustee would have no objection to it, the

4   Chapter 13 trustee would have no objection to it; it would

5   have been what it truly was:  A matter settled between the

6   parties, Chase withdrew its MFR, Mr. Shaev would withdraw the

7   debtor's cross-motion, and the matter would be concluded

8   except to the extent Your Honor is interested in pursuing a

9   rule to show cause, which is, as I mentioned earlier,

10  certainly perfectly free to do.  We're not in any way able,

11  if we even desired to, to prevent you from doing that.

12           So this is really no different than that situation.

13  And we could have resolved this matter, and I suppose we

14  still even could, if Mr. Shaev didn't insist on the Court's

15  ordering things, settle it in a private way and simply

16  withdraw the motion.  And this is -- none of the parties, the

17  Chapter 13 trustee or trustee -- U.S. Trustee, I would

18  suggest, would have really been looking behind that to see

19  what the settlement terms were, or why Mr. Shaev withdrew the

20  motion, or why Chase withdrew its MFR.

21           Thank you, Judge.

22           THE COURT:  Thank you, Mr. Lesniak.

23           Mr. Shaev, do you want to be heard further?

24           MR. SHAEV:  No, Your Honor.

25           THE COURT:  Why did you insist on it being in an

1  order approved by the Court?

2          MR. SHAEV:  Well, there are terms in that order that

3  are very important to my client and myself, and under no

4  circumstances was I going to file such a cross-motion and not

5  have whatever settlement there was at least be so ordered by

6  the Court.  I wasn't going to take the chance of Your Honor

7  saying we did this behind your back.

8          THE COURT:  Thank you, Mr. Shaev.

9          Is Chase prepared to disclose the terms, Mr.

10  Lesniak?

11          MR. LESNIAK:  In camera, Your Honor?

12          THE COURT:  No.  On the record.

13          MR. LESNIAK:  On the record?

14          THE COURT:  Yes.

15          MR. LESNIAK:  Can I take a moment to talk to my

16  client about that?

17          THE COURT:  Yes, you can.

18          MR. LESNIAK:  Thank you.

19      (Counsel confer.)

20          MR. LESNIAK:  May we step outside for a moment,

21  please, Judge?

22          THE COURT:  Yes, please, go ahead.

23          MR. LESNIAK:  Thank you.

24          THE COURT:  Yeah.  Go ahead.

25      (Pause.)

1    MR. LESNIAK:  I just wanted to ask for a

2    clarification as to what the Court is asking.  Are you asking

3    Chase to disclose just the amount of the settlement?  Or are

4    you asking Chase to disclose the entire terms of the

5    settlement --

6          THE COURT:  The entire terms of the settlement.

7          MR. LESNIAK:  Would that be in the form of reading

8    it on the record, or filing it?

9          THE COURT:  I'm going to want to hear Mr. Velez-

10   Rivera on that subject.

11         MR. LESNIAK:  Okay.  Then if I can, Your Honor, I

12   would ask to be able to communicate with Mr. Shaev as well

13   because the settlement agreement has certain terms about

14   confidentiality and we'd essentially be breaching the

15   agreement.  So I need to talk to him about that.

16         THE COURT:  Okay.  Mr. Shaev said something on the

17   record last week that this wasn't his request for

18   confidentiality that was involved, it was Chase's.  But let's

19   take a ten-minute break.  Why don't you talk with Mr. Shaev?

20   Also talk with Mr. Velez-Rivera because I consider the U.S. -

21   - Ms. Kava, you're in -- you can do it in here because Ms.

22   Kava is on the phone and she ought to hear this as well.

23         I consider the Chapter 13 trustee and the U.S.

24   Trustee to be very important players in any decision about

25   what happens here.  I take -- I said this earlier.  I mean, I

1  take Judge Lynch's decision in <u>Geltzer</u> and my own decision in

2  <u>Food Management Group</u> as dealing with the importance of

3  transparency in the Bankruptcy Courts as essential.  And just

4  so it's clear, I am not going to approve any order where all

5  of the terms are not disclosed.  That is -- that isn't going

6  to happen.

7          MR. LESNIAK:  Your Honor, may I suggest, then --

8          THE COURT:  Just let me finish.

9          MR. LESNIAK:  All right, I'm sorry.

10         THE COURT:  I'm not anxious to have a protracted

11  proceeding involving Mr. Wiener's firm and JPMorgan Chase

12  Bank.  I am very concerned, as I expressed earlier, about

13  whether Judge Morris's message that she tried to convey in

14  <u>Schuessler</u> has been heard.  You've indicated changes that are

15  being made.  But, you know, I'm prepared to consider, and

16  depending on what those terms are, approve -- consider, and

17  if proper, approve a settlement of the matter, the terms of

18  which are fully disclosed on the record.

19         And we'll take this ten-minute recess --

20         MR. LESNIAK:  Understood, Your Honor.  You may not

21  need it.  Could you give me two more minutes?

22         THE COURT:  Well, I think it's important that you

23  find out from Ms. Kava and Mr. Velez-Rivera what the position

24  of the Chapter 13 trustee and the U.S. Trustee is to how this

25  -- if you're prepared to disclose the terms on the record,

1  whether you need a revised stipulation and order, whether

2  it's put on the record and a transcript being available on

3  ECF.  I want to hear what the U.S. Trustee -- if Chase is

4  prepared to do that, and Mr. Shaev is prepared to do that,

5  what Ms. Kava and the U.S. Trustee have to say about it are

6  also important to me.

7            So let's take a ten-minute break.

8            MR. LESNIAK:  Thank you, Judge.

9      (Recess taken at 10:53 a.m.)

10     (Proceedings resume at 11:07 a.m.)

11           THE COURT:  Please be seated.

12           All right.  We're back on the record in the matter

13  of In Re William Robert Pawson, Number 05-18439.

14           Mr. Lesniak?

15           MR. LESNIAK:  Your Honor, if I may address the

16  Court, Chase is prepared at this point to right now read into

17  the record the entire settlement agreement and release

18  subject to a stipulation with Mr. Shaev that reading the

19  settlement agreement into the record does not constitute a

20  violation of any of the provisions of confidentiality or

21  otherwise by either Chase or Mr. Pawson.

22           THE COURT:  Mr. Shaev?

23           MR. SHAEV:  That's agreed to, Your Honor.

24           THE COURT:  Mr. Velez-Rivera, do you want to be

25  heard?  Are you satisfied with the -- what's been proposed?

1   And I'm going to ask Ms. Kava as well.

2          MR. VELEZ-RIVERA:  With respect to the single point

3   that reading the settlement agreement into the record won't

4   constitute a breach thereof, we take no position on that.

5          THE COURT:  No, I'm -- that wasn't what I was asking

6   you about, really.  Whether -- you know, I'm being asked to

7   approve an order and the settlement between Pawson and Chase.

8   The terms will be on the record.  A transcript will be

9   prepared and posted on ECF.  And my question really goes to

10  whether you're satisfied that that sufficiently addresses the

11  public interest in the terms of any settlement being part of

12  the public record.

13         MR. VELEZ-RIVERA:  I think I better answer that with

14  the admonition that the United States Trustee, regardless of

15  whether Your Honor approves the settlement, fully reserves

16  her rights vis-a-vis the movant, Chase in this case.

17         THE COURT:  So does the Court.

18         MR. VELEZ-RIVERA:  I understood that part.  Thanks,

19  Your Honor.

20         THE COURT:  All right.  Ms. Kava?

21         MS. KAVA:  The Chapter 13 trustee has no opposition

22  to, of course, the settlement being read.

23         THE COURT:  All right.  So let's proceed on that

24  basis.  Mr. Lesniak?

25         MR. LESNIAK:  May I, Your Honor?

1        THE COURT:  Yes, please.

2        MR. LESNIAK:  Your Honor, what I'm reading into the

3   record is a document entitled, "Settlement Agreement and

4   Release."  It reads as follows:

5            "This settlement agreement and release ("agreement")

6            is entered into as of this 5th day of August, 2008,

7            between William Robert Pawson ("William") and

8            JPMorgan Chase Bank, N.A. ("Chase"), and is in the

9            following terms and conditions."

10       The next section is headed, "Recitals:"

11           "Whereas, there is presently pending in the United

12           States Bankruptcy Court for the Southern District of

13           New York ("Court") that certain proceeding entitled

14           In Re William Robert Pawson, Case Number 05-18439-MG

15           ("bankruptcy case"), wherein William has filed a

16           petition pursuant to Chapter 13 of the United States

17           Bankruptcy Code, which proceeding remains pending,

18           and whereas in the bankruptcy case, Chase heretofore

19           filed a motion for relief from the automatic stay

20           ("MFR") which MFR has been withdrawn, and, whereas,

21           in the bankruptcy case, William has filed a response

22           to motion for relief from the automatic stay and

23           cross-motion pursuant to Bankruptcy Code Section 105

24           and 28 U.S.C. 1927 ("cross-motion"), which cross-

25           motion remains pending and undetermined, and whereas

1            Chase has denied any liability in connection with

2            the cross-motion, and whereas William and Chase

3            desire to fully settle, compromise and otherwise

4            resolve their dispute with respect to the cross-

5            motion and agree that it is in their respective best

6            interests to compromise their dispute with respect

7            to the cross-motion, specifically including the

8            avoidance of the costs, expenses and inconvenience

9            of litigation, and whereas William and his wife

10           Janet Pawson ("Janet") have heretofore executed a

11           certain cooperative apartment fixed rate note dated

12           November 7, 2003, payable to Chase ("note"),

13           together with a loan security agreement dated

14           November 7, 2003 in favor of Chase ("mortgage")."

15           Then the next section is headed, "Settlement

16  Provisions."

17           "Now, therefore, for good and valuable

18           consideration, the receipt and sufficiency of which

19           is hereby acknowledged, including without limitation

20           the representations, promises and agreements set

21           forth herein, and the limited joinder in this

22           agreement by Janet and by David Shaev ("David"), as

23           set forth herein below, the parties hereto agree as

24           follows:

25           "Paragraph 1:  Settlement payment.  Within ten days

1   of the execution of this agreement, Chase will pay

2   to William the sum of fifty thousand and zero one-

3   hundreds dollars, $50,000, by cashier's check upon

4   execution of this agreement.  Said payment shall be

5   made payable to David, William's attorney.  Said

6   payment is intended to constitute a full and

7   complete resolution of the cross-motion and any

8   matters related to the cross-motion or the MFR,

9   whether raised by William or otherwise.

10  Accordingly, in the event the Court sua sponte

11  orders any monetary payment to be made by Chase to

12  or for the benefit of William or David on account of

13  the cross-motion or the MFR (separate and apart from

14  the Court's approval of this agreement), then the

15  amount paid under this paragraph will be offset

16  against the amounts ordered to be paid by the Court.

17  If necessary to comply with this paragraph, William

18  will return to Chase the payment referred to in the

19  first sentence of this agreement to the extent, and

20  only to the extent that Chase is otherwise obligated

21  to pay any sum to William and/or David pursuant to

22  an order of the Court.  As an example, if the Court

23  sua sponte enters an award to William of $20,000,

24  said $20,000 will be offset against the $50,000 paid

25  pursuant to the first sentence of this paragraph,

and Chase will owe nothing more to William, or, as

another example, if the Court sua sponte orders

Chase to pay William $60,000, then $50,000 of that

$60,000 would be deemed paid pursuant to this

paragraph, and Chase would only owe William an

additional $10,000.

"Paragraph 2: Credit reporting repair. Within

thirty days from the date hereof, Chase will take

any and all action required or necessary to remove

any negative credit reporting made by Chase to any

credit reporting agency as to William and/or Janet

regarding payments due under the note for May 2008

and June 2008.

"Paragraph 3: Current loan information. Within ten

days from the date of this agreement, Chase will

provide to William a current transaction history for

the loan represented by the note and mortgage,

together with a then current payoff statement for

said loan. Chase shall be deemed to have complied

with this Paragraph 3 if it provides the information

to David.

"Paragraph 4: Qualified written request. In the

event that William or Janet makes a qualified

written request pursuant to 12 U.S.C. Section 2605,

it is deemed to be made separate and apart from this

1          agreement, and Chase's response thereto shall be

2          made separate and apart from this agreement,

3          provided, however, that William and Janet agree that

4          if a qualified written request is made by or on

5          behalf of either of them with respect to the loan

6          represented by the note and mortgage, it will made

7          to the attention of James P. Berg, Vice President

8          and Assistant General Counsel, JPMorgan Chase Bank,

9          N.A., Chase Home Finance Division, 194 Wood Avenue

10         South, Second Floor, Iselin, New Jersey --"  I hope

11         I pronounced that correct, Judge -- "08830.

12         Paragraph Number 5 entitled "Waiver of charges

13 related to MFR:"

14         "Chase agrees that no charges (such as filing fees

15         or attorneys' fees) with respect to the MFR will be

16         added to or charged to the loan represented by the

17         note and mortgage, and any such fees and costs are

18         specifically waived as to William and Janet.

19         "Paragraph 6:  Withdrawal of MFR.  As noted in the

20         foregoing recitals, the MFR has been heretofore

21         withdrawn.  Chase represents that the MFR has been

22         withdrawn with prejudice as to any payments due

23         under the note prior to August 1, 2008, but not as

24         to any payments coming due on the note after August

25         1, 2008.

1     "Paragraph Number 7:  Post-discharge Notification.

2     In the event William receives a discharge in the

3     Bankruptcy case, within thirty days after the entry

4     of the order of discharge Chase will provide to

5     William written notice by regular first class mail

6     of any outstanding fees or costs assessed to the

7     loan account represented by the note and mortgage

8     (such as late charges, property inspection fees,

9     attorneys' fees, or filing fees not otherwise waived

10    pursuant to Paragraph 5 of this agreement).  The

11    rights of William and/or Janet to contest any such

12    fees or costs are fully preserved herein.  If Chase

13    fails to give the written notice provided for in the

14    first sentence of this paragraph, then all such fees

15    or costs, if any, shall be deemed waived by Chase.

16    Chase shall be deemed to have complied with this

17    Paragraph 7 if it provides the information to David.

18    "Paragraph 8:  Confidentiality.  William, Janet and

19    David hereby agree, except to the extent required to

20    comply with this agreement or to secure the approval

21    of the Bankruptcy Court after proper notice and a

22    hearing, or pursuant to a subpoena or as otherwise

23    may be required by any applicable law, rule, or

24    regulation not to directly or indirectly disclose,

25    divulge, publicize or publish to any other entity or

1    individual for any purpose the terms of this

2    agreement, except and only to the extent of the

3    existence of this agreement and the terms that may

4    be set forth in any Court order entered in the

5    Bankruptcy case pursuant to this agreement.

6    Notwithstanding the preceding sentence, disclosure

7    of the settlement amount to the Bankruptcy Court may

8    only be made in the manner that is not in the public

9    record (such as in chambers).  In the event William,

10   Janet or David is asked about this case, he/she may

11   state that the matter has been resolved by the

12   mutual agreement of the parties and refer to the

13   official court record.  Notwithstanding the

14   preceding, William may disclose the terms of this

15   agreement to his attorney, to those employees and

16   contract assistants employed by his attorney who

17   need to know the terms of this agreement in order to

18   perform their job assignments or tasks assigned to

19   them, his accountant, any state or federal agency in

20   connection with the requirement to file any annual

21   or periodic reports, and tax preparers, as

22   necessary.  William, Janet and David agree that

23   he/she will not provide information or testimony in

24   any legal action against Chase concerning the terms

25   of this agreement except pursuant to a subpoena, and

that he/she will notify Chase within five business

days of any subpoena or informal request to testify

that he or she receives.  Such notice may be given

by e-mail addressed to James P. Berg at

JimPBerg@JPMorganChase.com, by facsimile addressed

to James P. Berg at 732-452-8035, or by a letter

mailed by certified mail, return receipt requested,

to James P. Berg, Vice President and Assistant

General Counsel, JPMorgan Chase Bank, Chase Home

Finance Division, 194 Wood Avenue South, Second

Floor, Iselin, New Jersey, 08830.  In the event of a

letter, notice shall be deemed given on the date of

the postmark on the letter.  Nothing in this

agreement will prohibit or restrict William, Janet

or David from providing information or otherwise

testifying or assisting in any governmental or

regulatory investigation.  In making any permitted

disclosure pursuant to this Paragraph 8, William,

Janet and/or David will also inform the recipient of

the disclosure that the terms and conditions of this

agreement are subject to the provisions of a

confidentiality agreement, and are to be kept

confidential by the recipient.  It is expressly

understood and agreed that this confidentiality

provision is an essential provision of this

1    agreement.

2    "Paragraph 9:  Withdrawal of Cross-motion.  Upon

3    execution of this agreement, William will promptly

4    withdraw the cross-motion with prejudice in the

5    bankruptcy case.  Withdrawal of the cross-motion

6    will be accomplished by a stipulated order in a form

7    to be agreed upon by William and Chase, which order

8    shall include language that orders Chase to comply

9    with the provisions of Paragraphs 2, 3, 5, 6 and 7.

10   However, the amount of the payment set forth in

11   Paragraph 1 of this agreement shall only be

12   disclosed to the Court in the bankruptcy case in

13   accordance with the provisions of Paragraph 8

14   hereinabove."

15   Paragraph 10, entitled, "Release regarding cross-

16   motion:"

17   "William hereby releases, acquits and forever

18   discharges Chase, its current and former affiliates,

19   predecessors, successors, assigns, and all of their

20   respective current and former agents, directors,

21   officers, and employees from all actual,

22   consequential, and exemplary damage, loss, claims,

23   demands, expenses, liabilities, obligations, actions

24   and causes of action whatsoever which he may now

25   have or claim to have against Chase relative to or

1   related to the cross-motion and/or the obligations

2   set forth in the cross-motion.

3   "Paragraph 11:  Release regarding credit reporting.

4   Provided that Chase complies with Paragraph 2 of the

5   agreement, William and Janet hereby release, acquit

6   and forever discharge Chase, its current and former

7   affiliates, predecessors, successors, assigns, and

8   all of their respective current and former agents,

9   directors, officers, and employees from all actual,

10  consequential, and exemplary damages, loss, claims,

11  demands, expenses, liabilities, obligations, actions

12  and causes of action whatsoever which he or she may

13  now have or claim to have against Chase relative to

14  or related to any credit reporting by Chase to any

15  credit reporting agency solely with respect to the

16  payments due May 2008 and June 2008 under the note.

17  "Paragraph 12:  Counterparts and signatures.  This

18  agreement may be signed in counterparts and which,

19  taken together, shall constitute a binding and

20  enforceable agreement in accordance with its terms

21  and conditions.  A facsimile or .pdf signature sent

22  via facsimile with a confirmation receipt or by e-

23  mail as evidence of same shall be deemed an original

24  counterpart for purposes of this agreement.

25  "Paragraph 13:  Binding agreement.  This agreement

1    shall enure to the benefit of and be binding upon

2    the successors and assigns of the parties hereto.

3    "Paragraph 14:  Professional fees.  Each of the

4    parties hereto shall bear and be responsible for his

5    or its own professional fees, including without

6    limitation, attorneys' fees in connection with this

7    agreement."

8    Paragraph 15, entitled, "The entire agreement."

9    "This agreement represents and constitutes the

10   entire agreement and understanding between the

11   parties, the subject matter hereof, and all previous

12   statements or understandings, whether expressed or

13   implied, oral or written, shall be superseded by

14   this agreement.  Any modifications of this agreement

15   must be in writing and signed by the parties

16   affected by such modifications.

17   "Paragraph 16:  Governing law.  This agreement shall

18   be interpreted and the rights and liabilities of the

19   parties hereto shall be determined in accordance

20   with the internal laws (as opposed to conflicts of

21   law provisions) of the State of New York.

22   "In witness whereof, the parties hereto voluntarily

23   and intending to be bound thereby do execute these

24   presence this 5th day of August, 2008."

25   There's a signature line, "Executed by JPMorgan

1    Chase Bank, N.A. by Thomas E. Reardon (phonetic), its

2    assistant vice president."

3            There's a signature line, "Executed by William

4    Robert Pawson."

5            We're almost done, Judge.  There's one --

6            THE COURT:  It's okay, Mr. Lesniak.

7            MR. LESNIAK:  -- additional paragraph.  It is

8    called, "Limited joinder of parties."  And it reads:

9            "For good and valuable consideration, the receipt

10           and sufficiency of which is hereby acknowledged,

11           including but not limited to Chase's execution of

12           the foregoing agreement with William, Janet Pawson

13           executes this agreement for the limited purpose of

14           being bound by the provisions of Paragraphs 4, 8 and

15           11, and David Shaev executes this agreement for the

16           limited purpose of being bound by the provisions of

17           Paragraph 8."

18           There are then signatures by Janet Pawson and David

19   Shaev.  That is the agreement in its entirety, Your Honor.

20           THE COURT:  Thank you, Mr. Lesniak.

21           Now let me ask whether the U.S. Trustee or the

22   Chapter 13 trustee wishes to be heard with respect to whether

23   the Court should approve the order.

24           Let me say that, with respect to the order that was

25   -- the stipulated order submitted to the Court, I have added

1  the following at the end of Paragraph 3.  Let me -- I think

2  Mr. Velez-Rivera doesn't have it.  Paragraph 3 in the text

3  that's there reads, quote:

4          "In order to avoid the costs and expenses of

5          litigation of the cross-motion and without any

6          admission of liability, William and Chase have

7          entered into a settlement agreement and release

8          (agreement) with respect to the cross-motion, the

9          terms and conditions of which the parties have

10         agreed to keep confidential, except to the extent

11         disclosed herein."

12         Immediately following thereafter, in brackets, I

13  have added:

14         "All terms of the settlement were disclosed on the

15         record in open court on August 13, 2008.  A copy of

16         the transcript will be prepared and posted on ECF."

17         Close bracket, and then my initials following it.

18         Mr. Velez-Rivera, do you want to be heard with

19  respect to whether the Court should provide -- give its

20  approval to the order?

21         MR. VELEZ-RIVERA:  Your Honor, I have to reiterate

22  something once, that the --

23         THE COURT:  Without prejudice to whatever rights the

24  U.S. Trustee --

25         MR. VELEZ-RIVERA:  And I need to be very precise

1  about that, Your Honor.

2         THE COURT:  Okay.

3         MR. VELEZ-RIVERA:  The settlement, in the event

4  approved by the Court, from my client's perspective does not

5  prejudice the right of the United States Trustee to take

6  action against Chase to the extent the United States Trustee

7  deems it appropriate under 28 U.S.C. Section 586 and Section

8  307 of the Bankruptcy Code.

9         There were a couple of features, hearing them for

10 the first time, Your Honor, and not being able to read them

11 makes them a little difficult to absorb.  But it appeared

12 that at least one of the provisions can be construed as tying

13 the Court's hands with respect to the payment and the

14 offsetting mechanism later on.  I'll leave that up to Your

15 Honor because we were listening to it, and we only got that

16 one shot.

17        THE COURT:  Right.

18        MR. VELEZ-RIVERA:  And that might not be the case.

19        But in the event it does do that, we think it is an

20 inappropriate provision.

21        And then, finally, we may seek the debtor's

22 cooperation later on under a variety of federal statutes,

23 including the Right to Financial Privacy Act.  We would like

24 that, in the event the settlement is approved, that the order

25 make clear that it should not interfere with the exercise of

1  my client's rights under that federal statute, among others,

2  or be deemed to limit the debtor's ability to cooperate with

3  my office, including giving testimony before this Court.

4         That's all I have, Your Honor.

5         THE COURT:  Thank you.  Ms. Kava?

6         MS. KAVA:  I'm going to go along with everything

7  that the U.S. Trustee said.  My only question is all those

8  paragraphs about the debtors keeping confidential all the

9  terms of the agreement and not to reveal all these things, it

10 seems to me that that's all moot now that it's on the record.

11        THE COURT:  Well, it's in -- what's been read is an

12 agreement.  The terms of the settlement are all now part of

13 the public record.

14        MS. KAVA:  Exactly.  So all those terms are pretty

15 much meaningless since they already are now part of the

16 public record.

17        THE COURT:  Well, they're in a written agreement

18 that was signed by the parties.  I think once matters are

19 fully disclosed on the record, so much for the

20 confidentiality.

21        MS. KAVA:  Right.  The trustee is fine with the

22 terms of it, Your Honor.

23        THE COURT:  All right.  Mr. Lesniak, Mr. Velez-

24 Rivera raised the issue about the debtor's cooperation with

25 the U.S. Trustee.  The stipulation is you -- the settlement,

1   as you read it, had a provision that required a subpoena.

2          Is it your position that in order for the debtor to

3   cooperate with the U.S. Trustee if I approve this order, they

4   would be required to only cooperate if they receive a

5   subpoena?

6          MR. LESNIAK:  If you give me a moment, Your Honor.

7   I thought there was a provision that addressed that.

8          It says -- I think it said that if they gave -- got

9   a subpoena, they'd have to notify us.  But there's a

10  paragraph -- a sentence that says, "Nothing in this agreement

11  will prohibit or restrict William, Janet or David from

12  providing information or otherwise testifying or assisting in

13  any governmental or regulatory investigation."

14         THE COURT:  All right, thank you.

15         MR. LESNIAK:  I think that covers it, Your Honor.

16         THE COURT:  I think it does.  Mr. Velez-Rivera, are

17  you comfortable having heard that again?

18         MR. VELEZ-RIVERA:  If the phrase "governmental

19  investigation" is construed broadly, then I'm okay.

20         THE COURT:  I would certainly construe it as

21  including your office.

22         MR. VELEZ-RIVERA:  Thank you, Your Honor.

23         THE COURT:  You're part of the Department of

24  Justice.

25         MR. LESNIAK:  Your Honor, if I may, I just had -- it

1   was our intention to settle this matter on a private basis

2   without restricting anyone's rights, any public official, and

3   as you can see, clearly contemplating that the Court would

4   have the ability to take action on its own.  So we are not

5   intending to, by our private agreement, restrict what the

6   U.S. Trustee or the Chapter 13 trustee does.

7        THE COURT:  Right.  I'm going to go ahead and

8   approve the order as submitted, with the addition to

9   Paragraph 3 that I read into the record.

10       Now I expressed my concern earlier.  As Mr. Shaev

11  has demonstrated in this and other matters, he's extremely

12  capable and able of representing his clients' interests.  The

13  bigger concern to me, Mr. Lesniak, as I explained, are pro se

14  debtors and debtors who are represented by counsel who are

15  less able or willing to defend themselves.

16       You had indicated that Chase has changed its

17  internal procedures.  And, obviously, the U.S. Trustee's

18  Office will determine what, if anything, they're going to do

19  further.

20       I am not anxious to enter an order to show cause and

21  launch a protracted proceeding, but what I would like to do

22  is this.  I would like to ask Mr. Lesniak and Mr. Wiener and

23  Mr. Berg, in-house counsel at Chase, to confer with Mr.

24  Velez-Rivera and Mr. Zipes from the U.S. Trustee's Office

25  came in, didn't make an appearance on the record, came in

1   when the hearing was underway -- confer with Mr. Velez-Rivera

2   and Mr. Zipes.  If the U.S. Trustee chooses to pursue this

3   issue informally, at least -- it's all well and good, Mr.

4   Lesniak, for you to state on the record what procedures Chase

5   has now put in place since the cross-motion in <u>Pawson</u> was

6   filed, but that has no teeth to it.

7           As I indicated, this was clearly a motion to lift

8   the automatic stay that never should have been filed, and one

9   or two phone calls would have made that imminently clear.

10  What I would like to give you, Mr. Lesniak and

11  representatives of the U.S. Trustee, two weeks to discuss the

12  matter and see whether you're able to -- on behalf of Chase,

13  and Mr. Berg, you're here and it's very important that you be

14  involved -- that Chase be prepared to document procedures

15  that will be followed certainly in the Southern District of

16  New York with respect to lift-stay motions and other matters.

17          Obviously, I can't at this stage require or compel

18  Chase to do anything.  I'm not trying to do that.  But what

19  I'm asking is if two weeks from today I would say -- what's

20  the date of that?  Yes, by 5 p.m. August 27th, I would like

21  to receive a letter from you, Mr. Lesniak, indicating whether

22  -- what the status of matters, whether you're able to reach

23  any resolution of the issues that are of concern to me with

24  the U.S. Trustee's Office, and I'll decide -- so I'm not

25  going to enter any order to show cause now.  I'll await

1  hearing whether you're able to deal with this matter with the

2  U.S. Trustee and, if appropriate, if you've reached agreement

3  and the U.S. Trustee wants to bring it back to me in this

4  case, I think that's appropriate.  There certainly have been

5  other matters -- sanction matters, Mr. Lesniak, where the

6  U.S. Trustee's Office has, after I've entered an order to

7  show cause, has pursued matters and worked out agreements

8  with counsel, in fact, and brought it to the Court for

9  approval.  And while it was entered in a specific case, the

10 order was more, you know, broader in its effect.

11        I'm not out on any witch hunt.  I want to make that

12 crystal clear.  But what I am very concerned about is what I

13 said.  I mean, if Chase has adopted satisfactory procedures -

14 - look, mistakes happen, things happen.  That's -- nothing is

15 going to be -- I don't think anything is going to be error

16 free.  But what concerns me is, after reading Schuessler when

17 Judge Morris published it, having seen the papers here, it's

18 kind of two strikes.  Three strikes and you're out, frankly.

19        So if you've reached some agreement with the U.S.

20 Trustee and bring that back, that's fine; if not, I'll

21 decide.  You don't have to go into details about the

22 discussions with the U.S. Trustee.  I just need to know

23 whether you've reached some agreement.  If not, tell me that,

24 and I'll decide whether to enter an order to show cause at

25 that time.

1    If I decide not to, the one thing I want to make

2   crystal clear on the record today is -- and you better look

3   at whatever in the next -- I don't know what's coming up in

4   front of me next week as a Chapter 13 day.  I don't know

5   whether I have any lift-stay motions from Chase that are

6   coming on next Thursday.  But you better look and find out.

7   And somebody better look and see whether the factual basis

8   for any motion is a solid one.  I will absolutely flyspeck

9   any papers that are before me in any lift-stay motions in

10  which Chase is the moving party.

11   I want to make clear, we're -- 362 is there for the

12  protection of creditors and I regularly grant motions to lift

13  stay when it's appropriate.  You know, I'll do so with

14  respect to Chase.  But I want to be sure that they're right.

15  So see what you're able to -- if you're not prepared to

16  discuss it with the U.S. Trustee, or if they don't want to

17  discuss it with Chase, that's fine.  But I'm going to sort of

18  allow this two-week window.  If you're in, you know,

19  continuing to have discussions and you want some more time,

20  if you can agree on that with the U.S. Trustee, August is a

21  difficult time to get things done, but if, you know, you can

22  -- and, obviously, copy the U.S. Trustee on the letter you

23  send to the Court.

24   Anybody else have anything they want to raise?  Mr.

25  Velez-Rivera, or Mr. Shaev?  Go ahead, Mr. Shaev.

1         MR. SHAEV:  Just one thing.  I'd like for counsel

2  for debtor, myself, to be cc'd on any correspondence --

3         THE COURT:  That's fine.

4         MR. SHAEV:  -- during this transaction period.

5         THE COURT:  I would agree with that, Mr. Shaev.  Mr.

6  Velez-Rivera?

7         MR. VELEZ-RIVERA:  Your Honor, I'll volunteer --

8         THE COURT:  I didn't mean to put the burden on you -

9  -

10         MR. VELEZ-RIVERA:  That's okay.

11         THE COURT:  -- on this, but --

12         MR. VELEZ-RIVERA:  Oh, no, that's okay.

13         We will endeavor to send the Court a letter also on

14  the 27th at 5 o'clock so you know where we are.  It's the end

15  of August.  We need to wait for a transcript.  So I can also

16  see myself asking you for more time.

17         THE COURT:  That's fine.  If, in two weeks -- look,

18  if you've had a discussion and you're not getting anywhere,

19  let me know that and then I'll decide what to do.  But if

20  you've had some discussions and you think more time is

21  needed, I'm going to be amenable to giving you more time.

22  I'm not anxious to enter -- at this stage, to enter an order

23  to show cause and launch a whole evidentiary hearing.  But if

24  I have to, we'll do it.

25         Mr. Lesniak?

1          MR. LESNIAK:  Your Honor, if I may, any letter that

2    we would send in to the Court would be one that would either

3    be jointly with the trustee, or certainly would be seen and

4    approved by the trustee beforehand.

5          THE COURT:  I understand.

6          MR. LESNIAK:  We're not going to --

7          THE COURT:  I understand.  Whether I get one letter

8    or two letters, that's fine.  You work it out between you.

9    Okay?

10          MR. LESNIAK:  We will, Judge.

11          THE COURT:  Anything else I need to address today?

12    All right, we're adjourned.  Thank you very much, everybody.

13          (Proceedings concluded at 11:40 a.m.)

14                               *****

15                           CERTIFICATION

16          I certify that the foregoing is a correct transcript

17    from the electronic sound recording of the proceedings in the

18    above-entitled matter to the best of my knowledge and ability.

19

20

21

22    _____          August 13, 2008

23    Cathryn Lynch, NJ Cert. No. 565

24    Certified Court Transcriptionist

25    Rand Reporting & Transcription, LLC